1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAREN DE LA FUENTE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | NO. CV 14-1112 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff Karen De La Fuente filed this action on February 21, 2014.
Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
magistrate judge.  (Dkt. Nos. 9, 10.)  On October 1, 2014, the parties filed a Joint
Stipulation ("JS") that addressed the disputed issues.  The court has taken the
matter under submission without oral argument.

        Having reviewed the entire file, the court affirms the decision of the
Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

        On April 11, 2011, De La Fuente filed applications for disability insurance
benefits and supplemental security income, alleging an onset date of December

1   1, 2010.  Administrative Record ("AR") 11, 149-58.  The applications were denied

2   initially and on reconsideration.  AR 11, 73-74.  De La Fuente requested a

3   hearing before an Administrative Law Judge ("ALJ").  AR 90-91.  On October 23,

4   2012, the ALJ conducted a hearing at which De La Fuente and a vocational

5   expert ("VE") testified.  AR 37-72.  On November 8, 2012, the ALJ issued a

6   decision denying benefits.  AR 8-21.  On December 20, 2013, the Appeals

7   Council denied the request for review.  AR 1-5.  This action followed.

8                                              **II.**

9                                **STANDARD OF REVIEW**

10          Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's

11   decision to deny benefits.  The decision will be disturbed only if it is not supported

12   by substantial evidence, or if it is based upon the application of improper legal

13   standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam);

14   *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

15          "Substantial evidence" means "more than a mere scintilla but less than a

16   preponderance – it is such relevant evidence that a reasonable mind might

17   accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In

18   determining whether substantial evidence exists to support the Commissioner's

19   decision, the court examines the administrative record as a whole, considering

20   adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

21   evidence is susceptible to more than one rational interpretation, the court must

22   defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

23                                             **III.**

24                                  **DISCUSSION**

25          **A.    Disability**

26          A person qualifies as disabled, and thereby eligible for such benefits, "only

27   if his physical or mental impairment or impairments are of such severity that he is

28   not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found that De La Fuente meets the insured status requirements through December 31, 2015.  AR 13.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that De La Fuente had the severe impairments of systemic lupus erythematosus, seizures and arthritis (arthralgias).  AR 13.  She had the residual functional capacity ("RFC") to perform light work.  She can sit, stand or walk for six hours out of an eight hour day.  She should not climb ladders, ropes or scaffolds or work around hazards.  She can occasionally climb ramps or stairs, balance, crawl, kneel, bend or crouch.  She can frequently reach, handle and finger bilaterally.  She should avoid even moderate exposure to extremes of heat and cold, and avoid environmental irritants or exposure to direct sunlight.  She can occasionally walk on uneven terrain.  She can understand and complete simple instructions and make simple decisions.  She can perform goal-oriented work where production quotas can be met at the end of the workday/workweek and not periodically throughout the workday.  AR 15.  She is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform, such as shirt presser or ticket seller.  AR 19-21.

---

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C.   Examining Physician's Opinion

De La Fuente contends that the ALJ did not properly consider the opinion of Dr. Safavi, a consultative examiner.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'"  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

Dr. Safavi performed an internal medicine evaluation and reviewed medical records on August 20, 2010, prior to the alleged onset date.  AR 267-72.  Dr. Safavi diagnosed systemic lupus erythematosus and history of seizure disorder.  AR 271.  De La Fuente did not have any active skin rash but had some symptoms of mild to moderate synovitis in different joints, including hands, wrists, left elbow, right knee and left ankle with painful range of motion in those joints.  Seizures had been well-controlled for the past couple of years.  The neurologic examination was within normal limits.  Dr. Safavi opined that De La Fuente could lift and carry 20 pounds occasionally and 10 pounds frequently.  She could walk, sit and stand for six hours out of an eight hour day.  She could occasionally perform activities requiring agility and could frequently use her hands for fine and gross manipulation.  *Id.*  She could occasionally bend, crouch, kneel, crawl and stoop.  AR 272.  Regarding environmental limitations, Dr. Safavi opined:

> The claimant should avoid climbing ladders.  She should avoid working at heights.  She should avoid working around unprotected water.  She should avoid working with, being around or driving machineries.  A seizure precaution should be considered.  She should avoid extreme heat or cold temperatures because of being

4

immunosuppressed.  The public exposure health prevention should be considered.

*Id.*

The ALJ gave weight to the opinions of Dr. Safavi.  AR 19.  De La Fuente argues that the ALJ failed, however, to provide specific and legitimate reasons for implicitly rejecting Dr. Safavi's opinion about public exposure health prevention. Dr. Safavi stated only that "public exposure health prevention should be considered," not that Plaintiff should avoid all public exposure.  AR 272.  The ALJ noted that Plaintiff is not housebound.[2]  AR 17.  Moreover, any error is harmless. Although the representative job of ticket seller involved significant interaction with the public (DICOT 211.467-030), the other representative job of shirt presser lists "People: 8 – Taking Instructions - Helping N – Not Significant" (DICOT 363.685-026).  Based on the vocational expert's testimony that there are 2,600 such jobs in Los Angeles County (AR 21), the shirt presser job alone existed in significant numbers in the national economy.  *See Barker v. Secretary*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs is a significant number of jobs).  Accordingly, any error was inconsequential to the ultimate nondisability determination.  *See Molina v. Astrue*, 674 F.3d 1104, 1121-22 (9th Cir. 2012).

**D.  Credibility**

De La Fuente contends the ALJ erred in rejecting her testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain

_____

[2]  Her activities included grocery shopping, walking her daughter to school, and going to the park or beach once a week.  AR 17, 208, 211.

1    or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344
2    (9th Cir. 1991) (en banc)).

3         "Second, if the claimant meets this first test, and there is no evidence of
4    malingering, the ALJ can reject the claimant's testimony about the severity of her
5    symptoms only by offering specific, clear and convincing reasons for doing so."
6    *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making
7    a credibility determination, the ALJ 'must specifically identify what testimony is
8    credible and what testimony undermines the claimant's complaints[.]'"  *Greger v.*
9    *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

10        In weighing credibility, the ALJ may consider factors including:  the nature,
11   location, onset, duration, frequency, radiation, and intensity of any pain;
12   precipitating and aggravating factors (e.g., movement, activity, environmental
13   conditions); type, dosage, effectiveness, and adverse side effects of any pain
14   medication; treatment, other than medication, for relief of pain; functional
15   restrictions; the claimant's daily activities; and "ordinary techniques of credibility
16   evaluation."  *Bunnell*, 947 F.2d at 346 (citing SSR 88-13)  (quotation marks
17   omitted).  The ALJ may consider:  (a) inconsistencies or discrepancies in a
18   claimant's statements; (b) inconsistencies between a claimant's statements and
19   activities; (c) exaggerated complaints; and (d) an unexplained failure to seek
20   treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

21        De La Fuente testified that she could not work due to a seizure disorder
22   and lupus.  AR 16, 51.  She had two seizures per week in the four months leading
23   up to the hearing, mostly while she was sleeping.  AR 16, 54.  The lupus causes
24   her "horrible" pain, body aches, swollen joints, swollen knees and hands, and
25   drowsiness.  AR 16, 55.  Her medications make her confused, forgetful, and
26   drowsy.  AR 16, 42, 52, 56.  She also gets blurry vision.  AR 53.

27        The ALJ found that De La Fuente's medically determinable impairments
28   could reasonably be expected to cause the alleged symptoms, but her

1    statements concerning the intensity, persistence and limiting effects of her

2    symptoms were not credible to the extent they were inconsistent with the RFC.

3    AR 16.  The ALJ relied on three reasons: (1) De La Fuente made inconsistent

4    statements and allegations; (2) the objective evidence did not support De La

5    Fuente's allegations; and (3) De La Fuente's activities of daily living were not

6    consistent with the alleged degree of pain and impairment.  AR 16-18.

7                          1. Inconsistent Statements

8         An ALJ may consider inconsistencies in a claimant's statements when

9    weighing a claimant's credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ cited

10   examples of De La Fuente's inconsistent statements.  AR 16.  Although De La

11   Fuente testified that she stopped working in 2007, she told one consultative

12   examiner that she stopped working in July 2008, and she told another

13   consultative examiner that she stopped working in September 2008.  AR 16, 40,

14   268, 286.  Although she alleged confusion, excessive fatigue and decreased

15   concentration, she indicated she could pay attention up to an hour and could

16   follow written instructions.  AR 17, 52, 56, 212.  The ALJ also noted that although

17   De La Fuente alleged that her hands get swollen and numb, she was able to

18   complete the Function Report legibly.  AR 17, 52, 207-14.  When stressed, she

19   goes to her room to read or pray, which requires some degree of concentration.

20   AR 17, 213.

21                          2. Objective Evidence

22        Although lack of objective medical evidence supporting the degree of

23   limitation "cannot form the sole basis for discounting pain testimony," it is a factor

24   that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d

25   676, 681 (9th Cir. 2005).  The ALJ noted that De La Fuente's neurology and

26   physical examinations were generally normal.  AR 19, 271, 288, 315.  Although

27   De La Fuente had symptoms of a mild to moderate synovitis in her hands, wrists,

28   left elbow, right knee, and left ankle with a painful range of motion in those joints,

1   no medical source opined that she could perform less than light work with

2   restrictions.  AR 271-72, 289-90, 292-96.

3          The medical records do not support De La Fuente's allegation that she

4   could not work due to frequent seizures.  On May 19, 2011, De La Fuente

5   indicated that her last seizure was in April 2011, and prior to that was a year

6   earlier.  AR 17, 279.  When De La Fuente went to the hospital on October 13,

7   2011 for a seizure and lupus flare, she noted she had a seizure the previous day

8   and a couple of months prior.  AR 17, 332.  No further seizures were reported

9   until September 2012.  AR 17, 496.

10          The record does not contain an abnormal EEG or abnormal MRI/MRA.  AR

11   17.  In October 2011, an MRI of the brain and MRA of the head were entirely

12   normal.  AR 14, 17, 343-44.  There is no EEG in the record confirming a seizure

13   disorder.  18, 262.

14          Regarding evidence of De La Fuente's lupus, the ALJ noted that the record

15   indicates skin rashes and chronic polyjoint pain that do not support the alleged

16   level of pain and restricted mobility.  AR 18, 279, 303, 333-34.  He noted that a

17   physical examination in May 2011 indicated a rash on the face and

18   telangectasias inside the mouth and nose, synovitis in the fingers, wrists, and

19   elbows, and trigger point tenderness throughout the body.  AR 18, 279.  De La

20   Fuente was treated with refills of medication and medication adjustments.  AR 18,

21   280.  The treatment note indicated that De La Fuente had been last seen in the

22   clinic in August 2010 and "did not have major organ manifestations."  AR 18, 279.

23   An October 2011 treatment note indicated complaints such as photophobia, skin

24   rashes after exposure to sunlight, hair loss, and polyjoint swelling, but the doctor

25   found no evidence of active lupus cerebritis.  AR 14, 316, 335.  In March 2012,

26   De La Fuente went to the clinic complaining of arthralgias and soft tissue

27   swelling.  AR 18, 351.  There was no obvious edema, but there was polyjoint

28

8

tenderness with mild synovitis.  AR 18, 351.  She was treated with medication and encouraged to exercise.  AR 18, 352.

As the ALJ noted, De La Fuente's seizures and lupus were well controlled when she was compliant with treatment.  AR 14, 17, 305, 324, 335, 380, 433, 511.

### 3. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346.  The ALJ noted that De La Fuente helps with household chores, depending on how she feels.  AR 16, 50.  She tries to vacuum every day, she does laundry every two weeks, she cooks "home made healthy food" every two days, she does dishes once a week, and she goes grocery shopping twice a month.  AR 17, 49-51, 209.  She is independent in self-care and grooming, but there are days she needs assistance.  AR 16, 208.  She cares for her daughter, with assistance from her sister.  AR 17, 208.  She can walk half a block before needing to rest for 30 to 45 minutes.[3]  AR 212.

De La Fuente argues that her daily activities do not necessarily show that she can hold down a full-time job.  Assuming the ALJ erred in discounting De La Fuente's credibility based on her activities of daily living, remand is not necessarily warranted.  In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid.  However, when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*"

---

[3]  The ALJ stated that De La Fuente could walk for 30-45 minutes, but it appears that De La Fuente indicated that she had to rest for 30-45 minutes before she resumed walking.  AR 17, 212.  The ALJ also stated that De La Fuente could exercise and do other physical activities.  It appears De La Fuente wrote that she cannot do those things "extremely."  AR 14, 208.

1   *Id.* at 1162 (italics in original).  Therefore, when, as here, an ALJ articulates

2   specific reasons for discounting a claimant's credibility, reliance on an illegitimate

3   reason(s) among others does not automatically result in a remand. *See Batson v.*

4   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  In light of the

5   ALJ's valid reasons for discounting De La Fuente's credibility and the record as a

6   whole, substantial evidence supported the ALJ's credibility finding.  *See Bray v.*

7   *Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (error was harmless even if record

8   did not support one of four reasons for discounting claimant's testimony).

9   Therefore, "we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959

10   (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

11   1999)).[4]

12   **IV.**

13   **ORDER**

14       IT IS HEREBY ORDERED that the decision of the Commissioner is

15   affirmed.

16       IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

17   the Judgment herein on all parties or their counsel.

18

19   DATED: November 21, 2014       _____

20                             ALICIA G. ROSENBERG
                           United States Magistrate Judge

21

---

22       [4] To the extent De La Fuente contends that the ALJ did not consider the
effects of her combined impairments, her claim fails.  The ALJ found that De La
Fuente did not have an impairment or combination of impairments that met or
equaled a listed impairment, including listings 1.02, 1.04, 11.02, 11.03, and
14.02.  AR 15.  De La Fuente offers no theory as to how her impairments
combined to equal a listed impairment.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th
Cir. 2001) (claimant did not satisfy burden to prove that he equaled a listing when
he "offered no theory, plausible or otherwise, as to how his [impairments]
combined to equal a listed impairment . . . [n]or has he pointed to evidence that
shows that his combined impairments equal a listed impairment.").  Nor did she
make such an argument to the ALJ.  *See Burch*, 400 F.3d at 683 ("An ALJ is not
required to discuss the combined effects of a claimant's impairments or compare
them to any listing in an equivalency determination, unless the claimant presents
evidence in an effort to establish equivalence.").